IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | | |
|---|---|---|---|
| In Re: DENISE KOVACH | ) | CASE NO. | 13-15340 |
| | ) | | |
| Debtor | ) | Chapter | 7 |
| | ) | | |
| | ) | JUDGE: | Arthur I. Harris |

## DEBTOR'S OBJECTION TO REOPEN CASE

Debtor Denise Kovach hereby responds to Creditor David Ayers' Motion to Reopen Bankruptcy Case and moves this Court to deny and overrule the motion. For the grounds set forth herein, the motion is not well taken and should be denied.

## JURISDICTION

Jurisdiction exists under 28 U.S.C. 1334. This is a core proceeding under 28 U.S.C. 157(b)2(A). Creditor's motion was brought pursuant to 11 U.S.C. 350(b).

## INTRODUCTION

Creditor David Ayers ("Movant") has moved the Court to reopen this closed case. Movant claims that notices of the bankruptcy proceeding sent by the Court, through the Bankruptcy Noticing Center, were never received in order for him to appear at the initial meeting of creditors and to timely object to a discharge. As will be conclusively demonstrated, this argument lacks merit.

## BACKGROUND

As early as March 27, 2013, Movant's counsel was aware that the Debtor was intending on filing for bankruptcy protection. (See, Movant's Motion at Exhibit A.) Conversations and

1

emails were then exchanged between the undersigned bankruptcy counsel for the Debtor and Movant's counsel in May, 2013. During those conversations, Movant's counsel offered to pay the undersigned counsel to file an action against the City of Cleveland. That offer was rejected, but on May 13, 2013, the Debtor agreed to assign any right Movant thought the Debtor had to any indemnification rights against the City of Cleveland. (<u>See</u>, Exhibit 1, attached hereto.) Movant refused this offer.

On July 29, 2013, approximately 17 months ago, after Movant's counsel threatened to heighten collection efforts against the Debtor, Denise Kovach filed for relief under chapter 7 of the Bankruptcy Code ( 11 U.S.C § 101 et seq.). (Doc. #1.) Movant <u>and</u> Movant's counsel were both listed as creditors on Schedule F and were listed on the creditor's matrix. *Id.*

On July 30, 2013, the day immediately following the filing of the Debtor's bankruptcy petition, the undersigned Debtor's counsel emailed Movant's counsel that the Debtor filed a bankruptcy petition. (<u>See</u>, Exhibit 2.) The email identified the case number and the date of the bankruptcy filing which occurred on the prior day. *Id.*

The Notice of Chapter 7 Case, Meeting of Creditors, & Deadlines (the "Bankruptcy Notice") was mailed by the Court, through the Bankruptcy Noticing Center, on August 2, 2013, to Movant and his counsel. (Doc. #5.)

As noted by Movant in his motion, the underlying debt of Movant, <u>which the Debtor scheduled and listed on her petition</u>, arose out of a March, 2013 jury trial judgment, in a matter filed by Movant in the U.S. District Court for the Northern District of Ohio, titled *Ayers v. Cleveland, et al* Case No. 1:12-CV-00753 (the "Federal Case"). That judgment is the subject of an appeal filed on April 9, 2013, in the Sixth Circuit Court of Appeals, Case No. 13-3413 (the "Appeal Case"). (<u>See</u>, Exhibit 3).

2

On August 15, 2013, a Notice of Automatic Stay identifying the Debtor's bankruptcy filing was filed in the Appeal Case and a copy thereof was served upon Movant's counsel. (See, Exhibit 4 - App. Doc. #25.)

On August 28, 2013, prior to the first meeting of creditors and the entry of the Debtor's discharge, the Clerk for the Sixth Circuit Court of Appeals notified counsel of record, including Movant's counsel, of the entry of an Order in the Appeal Case that stated that the matter was held in abeyance as to the Debtor. (See, Exhibit 5 – App. Doc. #28.)

The first meeting of creditors in the Debtor's bankruptcy case was held on September 3, 2013.

Pursuant to Rule 4004(a) of the Federal Rules of Bankruptcy Procedure, November 4, 2013 was established as the deadline to object to the Debtor's discharge.[1] Movant did not file a complaint objecting to the Debtor's discharge by November 4, 2013, nor did any other party, and, as a result, the Debtor was granted a discharge on November 6, 2013. (Doc. #15.) Two copies of the Discharge of Debtor (the "Discharge Notice") were again mailed to Movant's counsel on November 12, 2013. (Doc. #16.) Movant and his counsel do not contest receiving the Discharge Notice, which occurred one year ago.

On November 25, 2013, a status report was filed in the Appeal Case notifying the Court of Appeals of the status of the Debtor's bankruptcy proceedings. (See, Exhibit 6 – App. Doc. #38.) The status report indicated that no objections were filed in the bankruptcy case and all debts were discharged. *Id.* Movant's counsel was served with a copy of this status report. *Id.*

Approximately one year later, on November 5, 2014, Movant filed the present motion. (Doc. #18.) Movant claims that this closed case should be reopened because he did not receive

---

[1] November 4, 2013 was also the deadline to file a complaint to determine dischargeability of certain debts pursuant to Section 523(c) of the Bankruptcy Code. See, Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

3

the Bankruptcy Notice and had he received it he would have attended the first meeting of creditors and filed a complaint objecting to the Debtor's discharge, on the grounds that the Debtor failed to disclose the existence of a statutory and contractual right to indemnification from the City of Cleveland related to Movant's judgment. On the same day, Movant filed a complaint to revoke the Debtor's discharge.[2] Movant further claims in the complaint to revoke discharge that he filed a state court action against the Debtor, without leave of the Bankruptcy Court (in obvious violation of the discharge injunction, warranting a contempt finding plus costs, if such case was filed.)

## LAW & ANALYSIS

11 U.S.C. 350(b) permits a court to reopen a bankruptcy case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. 350(b). The reopening of a case rests within the sound discretion of the bankruptcy court. *In re Sheerin*, 21 B.R. 438, 439 (B.A.P. 1st Cir. 1982). A case will only be reopened upon a showing of compelling circumstances justifying the reopening. *Reid v. Richardson,* 304 F.2d 351, 355 (4th Cir. 1962).

There is no just cause compelling reopening because: 1) Movant had both actual and constructive notice of the bankruptcy proceedings; 2) Movant was properly served with the Bankruptcy Notice in accordance with Bankruptcy Rules; 3) reopening would be futile since Movant has a direct cause of action for the payment of the indemnification proceeds; 4) there was no concealment as proceeds of indemnification, if any, are not property of the estate; and 5) salacious rhetoric does not form the basis to reopen a closed case.

1. **Movant had both actual and constructive notice of bankruptcy proceeding and the reopening of the case is not proper.**

---

[2] The complaint to revoke discharge is untimely. Pursuant to Section 727(e) of the Bankruptcy Code, a complaint to revoke discharge is to be filed within one year after such discharge is granted. Since Movant filed his complaint in a bankruptcy case that is closed, the filing is a nullity.

4

Movant claims that cause exists because "[movant] and his counsel did not receive the 341 Creditors' Meeting Notice regarding the bankruptcy petition filed by Debtor Kovach." Movant acknowledges that copies of the notices were mailed by the Court but claims that these notices were not delivered to their intended address. Movant claims that had he "received proper notice, he certainly would have appeared at the creditors' meeting and objected to the discharge on grounds including the [Debtor] had concealed …claims." As will be explained, this argument is without merit because there was actual and constructive notice. (It should be noted that Movant's counsel averred in his affidavit that he does not open his own mail delivered to him at his address.)

*In re Michael R. Mutts* 131 B.R. 306, (E.D. Va. 1991) is an analogous case. In *Mutts,* the movant alleged it did not receive notice from the bankruptcy court, although it was listed as a creditor. The movant in *Mutts* attached an affidavit stating that no notice was received. The movant claimed that had it obtained notice it would have filed an objection to discharge because of the nature of the intentional criminal activities giving rise to the claim. The court disagreed and denied the request to reopen the case for cause. The court acknowledged that on at least two instances the bankruptcy court sent notices to all creditors. The court agreed "with the debtors that it is exceedingly improbable that *two* notices would not reach the proper address listed and yet not be unreturned to the court file. It is far more likely that the notices were received at the proper address and that the mysterious absence of the notices from [movant's] file is due to their being lost after arrival." *Id.* Here, as in *Mutts*, copies of the Bankruptcy Notice were mailed to Movant and Movant's counsel. In addition, copies of the Discharge Notice were mailed to Movant and Movant's counsel, making a total of four unreturned mailings. Clearly, the Bankruptcy Notice and the Discharge Notice were reasonably calculated, under all circumstances, to apprise the interested party of the action. It is improbable that the notices did

5

13-15340-aih    Doc 24    FILED 11/19/14    ENTERED 11/19/14 13:16:02    Page 5 of 15

not reach their intended recipient. With that being said, the case here is even more compelling. Not only did the Bankruptcy Court notify Movant's counsel twice, but Movant's counsel received at least 3 filings in the Appeal Case of the Debtor's bankruptcy case, one of them being the Appeal Court's order staying the appeal.[3] (See, Notice of Automatic Stay, Exhibit 4; Order of Stay, Exhibit 5; and, Status Report, Exhibit 6).

Despite the specious personal attack upon Debtor's counsel made in the motion, Debtor's counsel actually went out of his way to personally notify Movant's counsel of the bankruptcy proceeding by sending Movant's counsel an e-mail, which included the bankruptcy case number and the filing date. (See, Exhibit 2.) Despite this email notice providing actual knowledge of the bankruptcy proceedings, Movant elected to sit on his hands. Equity assists the vigilant and diligent, not those who sleep on their rights. *In re Cmehil,* 43 B.R. 404, 408 (Bankr.N.D. Ohio 1984). In fact, Movant does not indicate why he waited so long before doing anything in this case, which has been closed for one year.

Just as in *Mutts,* it is likely that Movant's counsel simply "overlooked, misplaced, misfiled, or even negligently mishandled or ignored the notices." This court, like *Mutts,* should deny the motion to reopen. Indeed, the many, many notices demonstrate that equity should not lie due to Movant's dilatory actions; Movant's lack of vigilance and diligence should not be rewarded against the finality of a discharge and the intent to give a Debtor a fresh start.

Remarkably, Movant claims the granting of his motion will not impact the Debtor obtaining a fresh start. This statement could not be further from the truth. Contemporaneous

---

[3] Note, Bankruptcy Judge Speer has held that creditors will be charged with notice of bankruptcy if they are "in possession of sufficient facts such as would cause a reasonably prudent person the right to make further inquiry." *In re Summers* 213 B. R. 825 (Bkrtcy.N.D. Ohio 1996). *Summers* involved an Ohio municipal court providing actual notice. Here, we have the Sixth Circuit Court of Appeals providing actual notice. See also, *In re Burdel,* 126 B.R. 278 (Bankr. N.D. Ohio 1991) (actual knowledge of bankruptcy, but without formal notice of bar date, insufficient to prevent discharge of debt arising out of criminal fraud).

with the filing of his motion, Movant filed a complaint to revoke the Debtor's discharge. It is axiomatic that being straddled with over $13 million dollars in debt would have a substantial impact on affording a debtor a fresh start, particularly one who is retired and receiving a pension. Reopening the bankruptcy case to afford Movant a second opportunity destroys important elements of certainty and hampers a debtor's fresh start. *In re Sexton*, 2014 WL 3616206, (Bankr. W.D. Va. July 21, 2014).

### 2. **Movant was properly served with the Bankruptcy Notice in accordance with Bankruptcy Rules.**

Despite Movant's assertions that the Bankruptcy Notices were not received, service of the Bankruptcy Notice was proper and completed. Movant acknowledges that the Bankruptcy Notices were mailed by the Court to the correct address, but just not received. Proof of receipt is not needed to constitute good service in bankruptcy proceedings. As explained in *In re Pratt* 165 B.R. 759 (Bankr. D. Conn. 1994):

> The noticing procedure employed by bankruptcy courts is deemed complete when the clerk's office certifies that notice was mailed to the appropriate parties. See Fed.R.Bankr.P. 9006(e) ( "Service ... of notice by mail is complete on mailing."); see also In re Walker, 161 B.R. 911, 913 (Bankr.D.N.J.1993) ( "Under the Federal Rules of Bankruptcy Procedure, therefore, service to the [creditors] was complete upon the mailing of the ... Notice."). Proof of receipt is not required. Cf. In re Rockmacher, 125 B.R. 380, 384 (S.D.N.Y.1991) ("While the bankruptcy rules certainly are meant to give creditors notice of relevant dates, they also promote the expeditious and efficient administration of bankruptcy cases by assuring participants in bankruptcy proceedings that, within the set period of 60 days, they can know which debts are subject to discharge.") (internal quotations omitted).

Accordingly, since notice by bankruptcy courts is deemed complete when the clerk's office certifies that notice was mailed to appropriate parties and proof of receipt is not required, Movant received proper notice. Fed.R. Bankr.Proc. Rule 9006(e). See also, *Id.* As the *Pratt* court said, "failure of the movants to receive notice sent by the clerk's office does not translate to clerk's

7

office error" "[a]ny number of events subsequent to the mailing may have intervened to prevent receipt of notice" service was complete on mailing not receipt. *Pratt* at 762.

> **3. Reopening of Bankruptcy Case is improper because it would be futile since Movant has a direct cause of action for the indemnification proceeds.**

Notwithstanding actual and constructive knowledge of the Debtor's bankruptcy case and service being proper according to the Bankruptcy Rules, any one of which defeat Movant's request for reopening "for cause", reopening this case would be futile. A case need not be reopened if it is futile. *In re Shegog*, 2008 WL 4279470 (Bankr. E.D. Va. Sept. 9, 2008). Here, Movant claims a direct right of action against the City of Cleveland to obtain the relief he claims and, therefore, reopening the estate is unnecessary. In fact, when a non-bankruptcy forum has jurisdiction to determine the issue which is the basis for reopening the case reopening for cause should be denied. *In re PlusFunds Group, Inc.* 492 B.R. 202 (Bankr. S.D. NY 2013).

It is important to emphasize that the Movant previously asserted in other proceedings that he has a direct right of action against the City of Cleveland for indemnification. In particular, in April, 2014, well after the Debtor received her discharge and her bankruptcy case was closed, Movant filed in the Federal Case his Amended Motion to Reinstate Indemnification Claim ("Motion to Reinstate"). (See, Exhibit 7 – Fed. Case Doc #141.)[4] By the Motion to Reinstate, Movant sought to reinstate his indemnification claim against the City of Cleveland. In so doing, Movant openly acknowledged in his Reply in Support of the Motion to Reinstate, (See, Exhibit 8 – Fed. Case Doc #143), that Debtor had filed a bankruptcy petition and received a discharge.

---

[4] The original motion was amended to remove the Debtor and Michael Cipo and to seek relief only against the City of Cleveland.

8

Indeed, in the Reply, Movant strenuously argued and fully developed his right for a direct indemnification claim under the Ohio Revised Code against the City of Cleveland[5] and at pages 5-6 stated:

> The Ohio legislature's intent in enacting section 2744.07(A)(2) was to permit judgment creditors to proceed directly against a municipality to recover indemnification proceeds. *See, e.g., Vaughan v. City of Shaker Heights*, No. 10 C 0609, 2011 WL 5966732 (N.D. Ohio Nov. 28, 2011) (permitting a civil rights plaintiff to proceed directly against a municipality on a cause of action for indemnification under § 2744.07); *Paolisso v. Edison Local Bd. Of Educ.*, No. 90-J-36, 1992 WL 19829, at *1 (Ohio Ct. App. Feb. 5, 1992) (permitting the entry of a judgment directly against a school district solely on the basis of the district's obligation to indemnify its employee pursuant to § 2744.07); *see also City of Memphis*, 528 S.W.2d at 205 (holding that a similar statute permitted a judgment creditor to obtain indemnification proceeds directly from a municipality); *Dixon v. Holden*, 923 S.W.2d 370 (Mo. Ct. App. 1996) (holding that a similar statute permitted a judgment creditor to obtain satisfaction of a judgment directly from a state indemnity fund).
>
> Permitting such recovery serves the statute's employee benefit purpose by sparing municipal employees the often-prohibitive difficulty of having to pay a judgment prior to receiving indemnification proceeds. In *Dixon*, 923 S.W.2d 370, for example, the court explained that the state legislature did not intend to force government employees to deplete their savings, sell their homes, or have their wages garnished prior to receiving indemnification. *Id.* at 378 (reasoning that "[i]f it is the true intent of this statute to protect state employees as much as possible from the rigors of defending lawsuits borne out of state duties, then it defeats that purpose to have the employee pay from his or her pocket, or from the estate's assets, before being made whole."). Likewise, in *City of Memphis*, the court explained:
>
>> We recoil at any Suggestion that a policeman or fireman, or any other wage-earner during this era of inflation is required to submit to the hurt, humiliation and financial detriment of having his wages garnisheed, or of having to deplete his meager savings, or perhaps of having to sell his equity in his home in order to pay a judgment against him, and then, but only then, recover the money so paid. We cannot believe the Legislature intended any such absurd result.
>
> 528 S.W.2d at 205. A contrary construction of section 2744.07 would subject municipal employees across the state to unwarranted burdens upon the entry of a

---

[5] It should be noted that while Movant may have a right to a direct claim for indemnification, it is not certain if such claim has merit as the contractual and statutory language Movant relies upon may prohibit recovery, or provide defenses, in certain circumstances.

9

judgment against them.

Likewise, a construction of section 2744.07 that permits judgment creditors to invoke a municipality's indemnification obligation serves the statute's secondary purpose of ensuring that members of the public harmed by municipal employees' tortious conduct will be made whole. *See generally City of Memphis*, 528 S.W.3d at 203. In this case, unless Mr. Ayers is permitted to seek indemnification directly against the City of Cleveland, he may be unable to recover any of the damages awarded by the jury to compensate him for the extreme hardship he suffered as a result of Defendants' conduct.

If the Ohio legislature had intended a contrary result, it would have stated so in the language of the statute. *Compare, e.g.*, R.C. § 2744.07, *with* N.Y. Pub. Off. Law § 17 (providing for the defense and indemnification of state employees but clarifying that "[t]he benefits of this section shall inure only to employees as defined herein and shall not enlarge or diminish the rights of any other party"); *see also Dixon*, 923 S.W.2d at 381 (relying on the absence of such statutory language to conclude that the Missouri legislature intended to permit judgment creditors to seek indemnification directly from state employers). In enacting section 2 744.07, the Ohio legislature affirmatively chose not to limit actions relating to indemnification. *Compare* §2744.07(A)(2) (imposing no limitations on causes of action); *with* § 2744.07(B)(2) (imposing limitations on causes of actions challenging a political subdivision's decisions regarding consent judgments or settlements).

Movant further stated that "the weight of authority permits creditors to proceed directly against a municipality to recover indemnification proceeds" and Movant's "claim for indemnification is therefore legally sound and should proceed." (*Id.* page 2.)

Movant also proclaimed in his Reply that the direct indemnification claim of Movant is "solely against the City of Cleveland and not from Denise Kovach" and "will in no way violate her bankruptcy discharge order" (*Id.* page 13.) In fact, Movant stated that "the Bankruptcy Code unequivocally states that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e); *see e.g., In re Schultz*, 251 B.R. 823, 827-29 (Bankr. E.D. Tex. 2000) ("[T]he entry of a discharge order…voids judgments pertaining to pre-petition debt only with respect to the personal liability of the debtor" and "do[es] not preclude a determination of the debtor's liability on the basis of

10

which indemnification would be owed by another party.") (*Id.* pages 13-14.)

In response to the Motion to Reinstate, U.S. District Judge James W. Gwin granted Movant's Motion to Reinstate, holding that Ayers had a direct right of action for indemnification against the City of Cleveland. (See, Doc. #144 of Federal Case). Thereafter, the City of Cleveland filed a Motion to Dismiss the indemnification claim on jurisdictional grounds, arguing that the Federal Court should decline to exercise supplemental jurisdiction for the alleged state law indemnification claim since all other federal claims were disposed. The District Court, on July 11, 2014, entered its Opinion and Order granting the City of Cleveland's Motion to Dismiss and vacating its prior order that reinstated Movant's state law indemnification claim holding that state court was best suited to decide the issues. (See, Doc. #157 of Federal Case).

In this case, it would be futile to reopen a case when the person in interest seeking to reopen the case has a direct cause of action outside of the Bankruptcy Court to seek the recovery of the proceeds and was directed by the District Court to proceed in state court. It certainly would not constitute good cause.

    **4.**    **There was no concealment by the Debtor because the purported indemnification proceeds are not property of the estate.**

The crux of Movant's motion is that the Debtor's bankruptcy case should be reopened because the right to indemnification as against the City of Cleveland is property of the estate to be administered by the trustee. Interestingly, Movant has not cited one case that purported indemnification proceeds, subject to a direct action, should have been listed as property of the estate, warranting reopening of a bankruptcy case. Many courts refuse to reopen the bankruptcy case, but allow the creditor to pursue his claims after the discharge. The reasoning for this is due to the fact that the claim is not a first party right but a third party right. A third party right exists, as here, when there is a direct third party claim. A first party claim does not exist because no

11

13-15340-aih    Doc 24    FILED 11/19/14    ENTERED 11/19/14 13:16:02    Page 11 of 15

funds will be paid to the Debtor. Since no funds will be paid to the Debtor, or her bankruptcy estate if it is reopened, there is no benefit to all creditors.

Reopening the estate will not benefit the Debtor's creditors. The reason for this is simple. Had there been such direct proceeds, it would only benefit Movant and no other creditor. And, as illustrated above, Movant has been less than diligent in trying to obtain any such proceeds.

Movant's argument that "statutory and contractual claims to indemnification fall squarely within the definition of "property of the estate"" requiring it be listed on Schedule B is not so square. The sole case that Movant cites, *In re Louisiana World Expedition, Inc.* 832 F.2d 1391 (5th Cir 1987), for the proposition that the indemnification claim is property of the estate is readily distinguishable and actually supports the opposite proposition of law. *Louisiana World Exposition* actually stands for the proposition that while an insurance policy may be property of the estate, the insurance proceeds <u>are not</u> necessarily property of the bankruptcy estate and the Fifth Circuit refused to overturn the correctly decided dismissal of an adversary complaint. The Fifth Circuit stated that owning a policy of insurance <u>does not end the inquiry</u> as to whether the proceeds thereof are "property of the estate." (*Id*. at 1399.) The court concluded that the question is not who owns the policy but who owns the proceeds and that ownership of a policy does not inexorably lead to ownership of the proceeds. (*Id.* at 1399-1400.) The court found that although the debtor owned the policies, the proceeds were owned by its officers and directors and where therefore not part of the debtor's estate. (*Id*. at 1400.) Here, the Debtor does not, nor ever did, have the right to keep any proceeds that may be owed by the City of Cleveland with respect to Movant's judgment against Debtor. As such, the indemnification proceeds are not property of the estate that should have been disclosed on Debtor's bankruptcy scheduled, as alleged by Movant, thus, no concealment.

This conclusion is consistent with the holding of other courts that have considered this issue. *See, e.g. In re Marchfirst, Inc.,* 288 B.R. 526 (Bkrtcy.N.D. Ill 2002) (holding that insurance "proceeds are not property of the estate."); *Landry v. Exxon Pipeline Co.*, 260 B.R. 769, 786 (Bkrtcy. M.D. La. 2001).

As pointed out by the court in *Landry*:

> "[t]he overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim. When payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate. In other words, **when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate**." *citing*, *Houston v. Edgeworth*, 993 F.2d 51, 55 (5th Cir. 1993) (Emphasis in original.)

*Id*. at 786.

Thus, most of the courts that have considered the issue have distinguished between first-party indemnification claims (where the debtor has the right to receive and keep the insurance proceed) and third party indemnification claims (where the insurance proceeds are paid to a third party). *See, e.g., In re Doug Baity Trucking, Inc.* 2005 WL 1288018, *4-5 (Bkrtcy, M.D. N.C. April 21, 2005) (citing cases).

In the present case, the Debtor has no right to receive and keep any alleged indemnification proceeds from the City of Cleveland. To the extent the City of Cleveland is liable pursuant to the collective bargaining agreement or statute, to indemnify the Debtor as a result of Movant's judgment, those funds would be payable directly to Movant, the injured party, not to the Debtor or her bankruptcy estate for the benefit of all her creditors. <u>See also</u>, *In re Youngstown Osteopathic Hospital Assoc.*, 271 B.R. 544 (N.D. Ohio 2002).

In this case, any right to the proceeds from indemnification from the City of Cleveland is not property of the Debtor's estate. Consequently, there can be no concealment of something

that is not estate property. The Debtor never had any right to keep for herself any indemnification proceeds. Whatever the intent of the Ohio indemnification statute or the collective bargaining agreement as between the City of Cleveland and its police officers, it was never meant to permit the Debtor to receive and keep indemnification proceeds - such proceeds would be paid directly to injured parties, like Movant. Hence the distinction between casualty proceeds payable to an injured insured debtor and other insurance proceeds payable to non-debtor third party victims of debtors' wrongful acts, the latter of which courts find not to be property of the estate.

**5. <u>Salacious rhetoric does not form the basis to reopen a closed case.</u>**

Movant's salacious defamatory claim that the City of "Cleveland helped to orchestrate Defendant Kovach's fraudulent bankruptcy filing by finding an attorney to represent her in the bankruptcy" should not go unchallenged. The Debtor, not the City of Cleveland, found her counsel and chose her own attorney, after interview, following a referral from her girlfriend, another client of the undersigned counsel. Movant's quixotic folly is baseless, scandalous, and should be stricken from the record.

<u>**CONCLUSION**</u>

Movant fails to establish just cause compelling the reopening of the bankruptcy case which has been closed for more than a year. Movant's claim that notices sent by the Bankruptcy Court, in accordance with well-established Bankruptcy Rules, were never received is not legally sufficient grounds to reopen this case. This is particularly true because of the many actual notices received and actual knowledge of the proceedings. Service was perfected in accordance with Bankruptcy Rules. Furthermore, reopening would be futile because there was no concealment of property of the estate as Movant has a direct claim for the debt against a non-debtor and whatever proceeds the state statute and collective bargaining agreement Movant

claims may exist are not property assets of the estate. All of this leads to the inescapable conclusion that Movant's motion should be denied and overruled.

Respectfully submitted,

    */s/ David M. Leneghan*
David M. Leneghan, Esq. (0062025)
200 Treeworth Blvd., Suite 200
Broadview Heights, Ohio 44147
(440) 223-4260 Fax (440) 838-4260
leneghanlaw@yahoo.com

## CERTIFICATE OF SERVICE

    I hereby certify that on this 19th day of November, 2014 a copy of the foregoing Objection to Debtor's Motion to Reopen was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

    */s/ David M. Leneghan*
David M. Leneghan, Esq. (0062025)

15

13-15340-aih    Doc 24    FILED 11/19/14    ENTERED 11/19/14 13:16:02    Page 15 of 15